UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES OF AMERICA, *Plaintiff*, v. JOSE GONZALEZ, *Defendant*. | No. 3:15-cr-00223 (MPS) |

**RULING ON MOTION FOR COMPASSIONATE RELEASE**

Defendant Jose Gonzalez is serving a sentence of imprisonment at Danbury Federal Correctional Institution in Connecticut and has filed a motion under 18 U.S.C. § 3582(c)(1)(A) for a reduction in his term of imprisonment due to the health risk posed by the COVID-19 virus. ECF No. 219. The Government filed a memorandum opposing Gonzalez's motion. ECF No. 224. I have carefully considered all these materials and the attached exhibits. For the reasons that follow, Gonzalez's motion is denied.

On December 30, 2015, a grand jury returned a superseding indictment charging Gonzalez with multiple counts of distributing cocaine and crack cocaine. ECF No. 32. On April 20, 2016, he pled guilty to count seven of the superseding indictment and agreed that his conduct involved approximately 78 grams of cocaine base and 350 grams of cocaine, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(B), and (b)(1)(C). ECF No. 82 at 1, 4. On July 21, 2016, I sentenced the defendant to 87 months of imprisonment, to be followed by five years of supervised release. ECF No. 117, 129. Gonzalez has been in custody since December 11, 2015 and has served

approximately 57 months of his sentence.  ECF No. 11.  His projected date of release is February

13, 2022.[1]

> Section 3582(c)(1)(A) authorizes courts to modify terms of imprisonment as follows:
>
> [T]he court . . . upon motion of the defendant after the defendant has fully exhausted all
> administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the
> defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden
> of the defendant's facility, whichever is earlier, may reduce the term of imprisonment
> (and may impose a term of probation or supervised release with or without conditions
> that does not exceed the unserved portion of the original term of imprisonment), after
> considering the factors set forth in section 3553(a) to the extent that they are applicable,
> if it finds that . . . extraordinary and compelling reasons warrant such a reduction . . . and
> that such a reduction is consistent with applicable policy statements issued by the
> Sentencing Commission[.]

18 U.S.C. § 3582(c)(1)(A).  Under this section, as modified by the First Step Act of 2018, Pub.

L. No.115-391, 132 Stat. 5239, I am free "to consider the full slate of extraordinary and

compelling reasons that an imprisoned person might bring before [the court] in motions for

compassionate release."  *United States v. Brooker*, No. 19-3218-CR, 2020 WL 5739712, at *7

(2d Cir. Sept. 25, 2020) ("Neither Application Note 1(D), nor anything else in the now-outdated

version of Guideline § 1B1.13, limits the district court's discretion.").  As a result, because

Gonzalez – and not the Bureau of Prisons ("BOP") – brings the instant motion, I am not bound

by the Sentencing Commission's outdated policy statement applicable to Section 3582(c)(1)(A),

*see* U.S.S.G. § 1B1.13, which the Second Circuit recognized as only applying to motions for

sentence reduction brought by the BOP.  *Brooker*, 2020 WL 5739712, at *1, 6 ("hold[ing] that

Application Note 1(D) does not apply to compassionate release motions brought directly to the

court by a defendant under the First Step Act . . ."; rather, this Guideline "only [applies] to those

motions that the BOP has made" under this Act).  However, I note that "[r]ehabilitation . . . *alone*

shall not be considered an extraordinary and compelling reason."  *Brooker*, 2020 WL 5739712,

---

[1] Federal Bureau of Prisons, *Find an Inmate*, https://www.bop.gov/inmateloc (last visited September 23, 2020).

at *8 (citing 28 U.S.C. § 994(t)) (emphasis in original).

Therefore, I may reduce Gonzalez's term of imprisonment if (1) he has fully exhausted his administrative remedies or 30 days have passed from receipt of his request by the Warden, and (2) I find, after considering the Section 3553(a) factors, that "extraordinary and compelling reasons warrant" a reduction of his term of imprisonment.

Gonzalez has met the exhaustion requirement because he has provided evidence of his requests for compassionate release dated April 14 and 23, 2020, and more than thirty days have passed without a response from the Warden. ECF No. 219 at 2.[2] As to the merits of Gonzalez's motion, although it is a close call, I find that he has not shown that there exist "extraordinary and compelling reasons" to warrant a reduction of his term of imprisonment.

Gonzalez argues that he is at high risk for serious illness or death from COVID-19 because of obesity, an immune system compromised by the removal of a lymph node, risk of diabetes, bronchitis, and steroid treatment for the bronchitis and for recurring hemorrhoids. ECF No. 119 at 4. Gonzalez is currently 43 years old, *id.*, so his age alone does not place him at increased risk of a severe illness under the CDC guidelines.[3]

As of June 2020, Gonzalez weighed 262 lbs which, at 6'1", yields a BMI of 34.6.[4] Although his weight has vacillated between approximately 231 and 265 lbs since at least 2016, *see* ECF No. 223 at 2, 4, 7 (noting Gonzalez's weight fluctuating between 231.0 and 265.0 lbs); ECF

---

[2] In any case, the Government does not contest that Gonzalez has exhausted his administrative remedies. ECF No. 224 at 5. As a result, it has forfeited any such defense. *See United States v. Jones*, No. 3:13-CR-00002 (MPS), 2020 WL 3451820, at *2 (D. Conn. June 24, 2020) ("Although the Second Circuit has not addressed this issue, District Courts in this Circuit have also concluded that the Government can waive exhaustion.") (collecting cases)).

[3] According to the Centers for Disease Control and Prevention ("CDC"), "the risk for severe illness from COVID-19 increases with age, with older adults at highest risk." Centers for Disease Control and Prevention, *Older Adults*, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/older-adults.html (last visited September 23, 2020). Age-related risk increases on a sliding scale, and the "greatest risk for severe illness from COVID-19 is among those aged 85 or older." *Id.*

[4] Centers for Disease Control and Prevention, *Adult BMI Calculator*, https://www.cdc.gov/healthyweight/assessing/bmi/adult_bmi/english_bmi_calculator/bmi_calculator.html (last visited September 23, 2020).

No. 218-1 at 2, 4, 18 (noting Gonzalez's weight fluctuating between 231.8 and 255.0 lbs), even at 231 lbs Gonzalez is considered – just barely – obese with a BMI of 30.5.[5]  According to the Centers for Disease Control and Prevention ("CDC"), "[p]eople of any age with certain underlying medical conditions are at increased risk for severe illness from COVID-19."[6]  Obesity, defined as a BMI of 30 or greater, is one of these underlying medical conditions.[7]  Thus, as the Government concedes, ECF No. 224 at 6, Gonzalez's obesity places him at increased risk of severe illness from COVID-19 under the CDC guidelines.

Gonzalez's other claimed risk factors, however, do not.  Although he did have a lymph node in his neck removed, ECF No. 219 at 4; ECF No. 218-1 at 3, he cites no medical authority supporting his assertion that such a removal has any compromising effect on his immune system.  As the Government points out, ECF No. 224 at 7, the CDC does not list lymph node removal as a risk factor.[8]  In addition, the American Cancer Society – in an article discussing lymph nodes and cancer – states that "[r]emoving lymph nodes during cancer surgery is highly unlikely to weaken a person's immune system, since the immune system is large and complex and is located throughout the body."[9]  Thus, Gonzalez has failed to show that he is at increased risk of severe illness from COVID-19 due to his removed lymph node.

Gonzalez's hemoglobin tests indicating that he is at increased risk of diabetes, ECF No.

---

[5] *Id.*

[6] Centers for Disease Control and Prevention, *People with Certain Medical Conditions*, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited September 23, 2020).

[7] *Id.*

[8] *Id.*  The CDC does state that individuals with an immunocompromised state are, or may be, at increased risk of severe illness from COVID-19, but lymph node removal is not listed as an example of a treatment or condition that can cause such a state.  *Id.* ("Many conditions and treatments cause a person to be immunocompromised or have a weakened immune system. These include: having a solid organ transplant, blood, or bone marrow transplant; immune deficiencies; HIV with a low CD4 cell count or not on HIV treatment;  prolonged use of corticosteroids; or use of other immune weakening medicines. Having a weakened immune system may increase your risk of severe illness from COVID-19.").

[9] American Cancer Society, *Lymph Nodes and Cancer*, https://www.cancer.org/cancer/cancer-basics/lymph-nodes-and-cancer.html (last visited September 23, 2020).

218-1 at 6 (Dec. 6, 2017), 8 (Aug. 29, 2018), 9 (Dec. 19, 2018), or at diabetic levels, *id.* at 7 (Apr. 24, 2018), likewise do not place him at any elevated risk. That is because he does not identify any actual diagnosis of diabetes, and his medical records indicate – both before and after the hemoglobin tests he points to – that he denies having any such disease. *See* ECF No. 218-1 at 3 (noting "No: Hx of Diabetes" on Oct. 28, 2016); ECF No. 223 at 13 (denying diabetes on Oct. 24, 2018); *id.* at 9 (denying diabetes on July 30, 2019). According to the CDC, type 2 diabetes does increase a person's risk of severe illness, and type 1 or gestational diabetes may increase a person's risk, but it does not identify a "risk" of diabetes as increasing a person's risk of severe illness.[10] Thus, Gonzalez's hemoglobin tests do not increase his risk of severe illness from COVID-19.

Gonzalez's past bronchitis also does not increase his risk of severe illness. His medical records indicate that he reported having bronchitis, but that "he was successfully treated with PRN Albuterol and PO steroids." ECF No. 218-1 at 10. According to the CDC, chronic bronchitis "is known to increase [a person's] risk of severe illness from COVID-19."[11] The CDC also states that "[o]ther chronic lung diseases . . . may increase [a person's] risk of severe illness from COVID-19."[12] The CDC does not identify a past episode of acute bronchitis,[13] which Gonzalez appears to have had, as such a risk factor. Thus, Gonzalez's past bronchitis does not elevate his risk of severe illness from COVID-19.

Lastly, Gonzalez points to his history of steroid treatments, which can be immunosuppressive, for bronchitis and hemorrhoids as an additional risk factor. ECF No. 219 at 4. His medical records indicate that he has taken steroid treatments for both ailments. *See* ECF

---

[10] Centers for Disease Control and Prevention, *People with Certain Medical Conditions*, *supra* note 6.
[11] *Id.*
[12] *Id.*
[13] *See* Centers for Disease Control and Prevention, *Chest Cold (Acute Bronchitis)*, https://www.cdc.gov/antibiotic-use/community/for-patients/common-illnesses/bronchitis.html (last visited September 23, 2020).

No. 218-1 at 10 (noting prior steroid treatment for bronchitis, May 30, 2020), 12 (noting treatment of hemorrhoids with hydrocortisone cream, Aug. 22, 2016), 19 (noting hydrocortisone acetate suppository for hemorrhoids, Feb. 6, 2017).  According to the CDC, an immuno-compromised state from "prolonged use corticosteroids . . . may increase [a person's] risk of severe illness from COVID-19."[14]  But Gonzalez does not point to evidence that he has sustained use of steroids for either disease, or both, over a prolonged period.  At most, his medical records suggest that he used hydrocortisone, in one form or another, for no more than 104 non-consecutive days between August 22, 2016, ECF No. 218-1 at 12, 15 (noting that hydrocortisone is a new medication, and prescribing its use for 14 days), and (approximately) May 7, 2017, *id.* at 19 (noting a prescription for hydrocortisone dated Feb. 6, 2017 that lasts for 90-days).  Although his records do not indicate a specific time period over which his bronchitis was treated with steroids, it could not have exceeded two months.  *Id.* at 10.  Even if the length of these treatments were considered a prolonged period, however, Gonzalez provides no evidence suggesting that the topical or local steroid treatments for hemorrhoids could have a systemic immunosuppressive effect that lasts for years beyond the termination of such treatment.  In addition, as he notes, he recently had hemorrhoidal surgery, and does not indicate that he currently uses or requires steroid treatment at all.  ECF No. 224 at 8.  Thus, Gonzalez likely does not face any increased risk of severe illness from COVID-19 based on his history of steroid treatment.

While Gonzalez faces an increased risk from COVID-19 under the CDC guidelines due to his obesity,[15] I find that that condition alone is insufficient to qualify as an "extraordinary" or "compelling" reason warranting a reduction in his term of imprisonment when the factors in 18

---

[14] Centers for Disease Control and Prevention, *People with Certain Medical Conditions*, *supra* note 6.
[15] As the Government suggests, ECF No. 224 at 8-9, Gonzalez appears to be capable of reducing his risk of severe illness from COVID-19 by controlling his weight through self-care. *See id.* at 6.  If true, Gonzalez should be able to reduce his medical vulnerability to COVID-19 based on his BMI through proper diet and exercise while in prison.

U.S.C. § 3553(a) are taken into account, as they must be under Section 3582(c)(1)(A). In addition, as noted above, I also cannot find "extraordinary" or "compelling" reasons solely on the basis of Gonzalez's progress toward rehabilitation, which I discuss in more detail below. *See* 28 U.S.C. § 994(t); *Brooker*, 2020 WL 5739712, at *8. Even in combination with Gonzalez's increased medical vulnerability due to obesity, these factors together are insufficient to qualify as such "extraordinary" or "compelling" reasons. Here, the Section 3553(a) factors—especially the need to protect the public and promote respect for the law—weigh heavily against the requested reduction in his term of imprisonment.

As detailed in the Government's memorandum, Gonzalez has a considerable criminal record, including a crime of violence and two convictions for firearm offenses, that shows a disregard for the law spanning three decades and provides substantial evidence that he has not "aged out" of criminal behavior. Gonzalez first got involved with the Los Solidos gang at the age of 11. PSR, ECF No. 119 ¶ 54. By the time he reached the age of 16, Gonzalez had been arrested multiple times on charges including assault, larceny, and possession of narcotics and firearms, and had twice led the police on a high-speed chase. *Id.* ¶¶ 40-48. In January 1997, at the age of 19, Gonzalez was sentenced to 135 months in prison and a five-year term of supervised release for the drive-by shooting and murder of a rival gang member belonging to the Latin Kings. *Id.* ¶ 31. Ten years later, in 2007, Gonzalez was sentenced to 24 months' imprisonment and three years'[16] supervised release for violating the terms of his supervised release by: (1) failing to report; (2) failing to participate in mental health treatment; (3) associating with members of the Los Solidos gang; and (4) engaging in criminal activity – specifically, possession of marijuana. *Id.* ¶¶ 31, 32. Three years later, in 2010, Gonzalez again was sentenced to a term of imprisonment for violating

---

[16] The Government correctly notes the apparent inconsistency in the PSR, which states that Gonzalez only received a two-year term of supervised release. *See* 95-cr-200, ECF No. 98 at 3.

the terms of his supervised release. *Id.* ¶ 33. This time, Gonzalez was arrested on various state firearm and drug offenses and a federal firearm offense, the latter of which he was convicted of and yielded an effective sentence of 72 months' imprisonment and no supervised release. *Id.* ¶¶ 31, 33.[17] Then, in 2014 at the age of 37, Gonzalez was arrested on state charges for carrying a dangerous weapon, for which he received three years of probation. *Id.* ¶ 34. One year later, *again* while on probation, Gonzalez was arrested for the offense for which he is currently incarcerated – possession with intent to distribute and distribution of cocaine base and cocaine. *Id.* ¶¶ 1, 8-9.

As noted above, I sentenced Gonzalez to 87 months' imprisonment and a five-year term of supervised release. ECF No. 129 at 1. In doing so, I specifically noted that

> The sentence, which is at the top of the advisory Guidelines range, reflects the need to protect the public and promote respect for the law, in light of the defendant's lengthy and serious criminal record, the speed with which he has re-offended after release in the past, and the fact that he committed the instant offense while on probation. Although the Court eliminated the crack/powder disparity, it found that the range that would result from that adjustment would be insufficient to serve the purposes of sentencing described above. Another important purpose of sentencing in this case is rehabilitation; the defendant has critical educational, vocational, mental health, and medical needs that have not been adequately met during previous incarcerations, including in the BOP. The Court has fashioned conditions of supervised release aimed at meeting these needs, including a recommendation for participation in a local reentry court. In addition, the Court requests that the BOP do whatever it can in particular to arrange for literacy training for the defendant.

*Id.* Although Gonzalez's recent progress while incarcerated is laudable – maintaining a record of good conduct in BOP custody and, in particular, obtaining a GED is a substantial accomplishment that likely improves his employability and may reduce his risk of recidivism, *see* ECF Nos. 219-2 (BOP progress report), 219-3 (GED documentation), I cannot conclude that the needs I identified at sentencing have diminished to the point that ending the imprisonment portion of his

---

[17] As the Government notes, the PSR does not reflect Judge Dorsey's amended judgment stating that Gonzalez's 60-month term for the federal firearm offense and 12-month term for his violation of the terms of his supervised release would run consecutively, not concurrently as stated in the PSR. *See* 09-cr-222, ECF No. 32.

sentence would be appropriate, even given his medical vulnerability to COVID-19.  Despite multiple opportunities to demonstrate the potential to function in society, Gonzalez has failed each time by quickly reoffending.  And while obtaining a GED and demonstrating good conduct while in BOP custody are steps in the right direction, they are not sufficient indicators that the needs to protect the public and to promote for respect for the law have been satisfied.  His contention that his progress while incarcerated lends support to his ability to rehabilitate faster if released, with his sister's support, is simply not substantiated by his lengthy and serious criminal record.  ECF No. 219 at 5-9.  Instead, at 43 years' old, Gonzalez's criminal history indicates that he has not yet aged out of criminal behavior, which is unusual and which warrants caution in entertaining his request for a reduction in his term of imprisonment.  I conclude that when the 3553(a) factors are taken into account, Gonzalez's case for a sentence reduction is not compelling or extraordinary.

Because I previously granted a motion under Section 3582(c)(1)(A) to reduce a term of imprisonment to time served for another convicted drug dealer with a lengthy criminal history, *see United States v. Acoff*, No. 3:09CR073 (MPS), 2020 WL 2781798, at *1 (D. Conn. May 29, 2020), some explanation of the differences between that case and this one is warranted.  First, Acoff had medical conditions that placed him at higher risk of severe illness from COVID-19 as compared with Gonzalez.  Specifically, Acoff was morbidly obese with a BMI of 43 (high risk even under the CDC's prior guidelines of BMI 40 and above) and he had a serious heart condition, both of which the CDC listed as increasing a person's medical vulnerability to COVID-19.  *Id.* at *1-2.[18] Second, Acoff's record was not as serious as Gonzalez's.  Like Gonzalez, Acoff did have a conviction for a felon in possession of a weapon.  *Id.* at 3.  But this occurred when Acoff was in

---

[18] *See also* Centers for Disease Control and Prevention, *People with Certain Medical Conditions*, *supra* note 6.

his 20s and, unlike Gonzalez, Acoff did not have a history of violent crime.  Third, Acoff is over ten years younger than Gonzalez, and – again unlike Gonzalez – there was no evidence that Acoff would not age out of criminality.  *Id.*

I do not take lightly the danger that COVID-19 poses to inmates—and especially those that are medically vulnerable.  But Gonzalez has only identified one factor that increases his medical vulnerability to COVID-19, and with regard to that factor, he may have some ability to mitigate his risk with self-care.  Even if he does not, I find that, when the Section 3553(a) factors—and especially his lengthy and violent criminal history and the consistently short period between his prior releases and renewed criminal behavior—are accounted for in this case, the risk to Gonzalez's health posed by COVID-19 does not move the needle to the "extraordinary and compelling" level that would warrant ending his term of imprisonment.  I therefore must deny this motion.

For the foregoing reasons, Gonzalez's motion to reduce sentence (ECF No. 219) is DENIED.

IT IS SO ORDERED.

_____
                /s/
Michael P. Shea, U.S.D.J.

Dated:          Hartford, Connecticut
                September 29, 2020